OPINION
{¶ 1} Defendant-appellant, Joel Flege, appeals from his conviction and sentence for OMVI. He contends that the trial court erred by overruling his motion to suppress the results of an alcohol breath test examination, because the State failed to present evidence sufficient to overcome his claim that the Beavercreek Police Department did not operate the testing machine in compliance with the requirements of the Ohio Administrative Code.
 {¶ 2} We conclude that the State presented evidence upon which a reasonable finder of fact could conclude that the test was performed appropriately. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Beavercreek Police Officer Sean Williams was on patrol in his cruiser when he noticed a vehicle speeding. Williams followed the vehicle, and saw it run a stop sign. Williams initiated a traffic stop during which he noticed a strong odor of alcohol on the driver, later identified as Flege. Williams testified that Flege, who admitted that he had been drinking, had red eyes and "stuttered" and "slurred" speech.
 {¶ 4} Williams then conducted a series of field sobriety tests including the horizontal gaze nystagmus ("HGN"), the one-legged stand, and the walk and turn tests. Flege failed all three tests. On the HGN, Flege was assigned the maximum of six points, four points being considered an indication of intoxication. In regard to the one-legged stand test, Flege was unable to stand on one foot, and he skipped numbers as he was counting. Finally, Flege was unable to remain standing on the line as Williams explained the walk and turn test. During the test, Flege used his arms for balance, was *Page 3 
unable to place one foot in front of the other as instructed, and twice stepped off the line. Williams then arrested Flege. After being informed of his rights, Flege admitted to having consumed two beers and a glass of whiskey.
 {¶ 5} Flege was transported to the Beavercreek Police Station where he was observed for twenty minutes. Thereafter, Officer David Majercak administered a Breathalyzer examination. The Breathalyzer registered Flege's breath-alcohol level at .101.
 {¶ 6} Flege filed a motion to suppress the result of the Breathalyzer examination. In the motion, Flege argued that he was not observed for twenty minutes prior to undergoing the test and that the test was not timely administered. He further argued that the test was not administered by a qualified senior operator, as required by Ohio Administrative Code § 3701-53-07(D). Flege also claimed that the machine had not been properly calibrated and that the radio frequency interference detector (RFI) was not properly verified. Finally, he claimed that the alcohol-based solution used to calibrate the machine was neither properly stored nor timely used.
 {¶ 7} At the hearing on Flege's motion to suppress, Officer Majercak testified that he is a qualified senior operator of the BAC Datamaster Breathalyzer machine. He further testified that Flege was stopped at 12:20 a.m. by Officer Williams, and that the breath test was performed at 1:54 a.m., well within the two-hour time frame required for the test. He testified that he personally observed Flege for twenty minutes prior to administering the test. Majercak testified that he was familiar with Ohio Department of Health rules and regulations regarding the Breathalyzer and its maintenance. Majercak testified that he was familiar with the regulation requiring that the machine be calibrated *Page 4 
within seven days prior to, and after, a test. He testified that the department keeps a rotation list for officers who are required to perform the calibration checks. He testified that he reviewed the log book to ensure that the machine calibrations had been timely performed. According to Majercak, the log book is kept in the testing area. He testified that the log book indicated that the calibrations were up to date and that the proper form had been signed by a senior qualified operator. Majercak testified that he checks that particular form prior to performing breath tests. Majercak testified that the alcohol solution used to calibrate the machine was not expired because the expiration date set forth on the bottle had not run. He further stated that the solution is properly stored in a refrigerator at the police station. He testified that department protocol required returning the solution to the refrigerator after using it on the machine. Majercak testified that he detected no problems with the machine or the RFI detector. Finally, he testified that the machine went through an internal check before and after Flege's sample was taken. That check causes the machine to beep and produce a blank test if RFI is detected. In this case, there was no indication of RFI.
 {¶ 8} In denying the motion to suppress, the magistrate made the following findings:
 {¶ 9} "As to the Breathalyzer test, I'm finding that based on how the Motion to Suppress was phrased, that the State has met its burden. I'm finding that Form 2255 was read to the Defendant by Officer Williams. Defendant consented to the test. He was observed 20 minutes continuously by both Officer Majercak, as well as Officer Williams, prior to administering the test. Defendant did not ingest anything into his mouth during that 20-minute time. Finding that the Defendant was stopped at *Page 5 
approximately 12:20 a.m. The test was conducted at approximately 1:54 a.m., well within the 2 hours of Defendant operating a vehicle.
 {¶ 10} "I find that Officer Majercak is a senior operator.
 {¶ 11} "Finding that there was substantial compliance with the O.A.C. and Ohio Department of Health regulations, that the solution was refrigerated and used within 3 months of its first utilization. That the calibration checks were performed within the required time periods of 7 days. That Officer Majercak did not detect any irregularities during conducting the test and did not note any RFI problems."
 {¶ 12} The magistrate overruled the motion to suppress. Thereafter, Flege filed objections to the magistrate's decision, contending that the magistrate's decision was erroneous because the State failed to "call the keeper of records for Beavercreek Police Department, nor did it produce any records regarding the maintenance or calibration of the breath machine or the substances used to calibrate it."
 {¶ 13} The trial court overruled Flege's objections. Flege entered a plea of no contest to the charge of Operation of a Motor Vehicle While Intoxicated, was found guilty, and was sentenced appropriately. Flege appeals from his conviction and sentence.
 II {¶ 14} Flege's sole assignment of error states as follows:
 {¶ 15} "THE TRIAL COURT ERRED IN OVERRULING THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT IT SUBSTANTIALLY COMPLIED WITH STATE REGULATIONS PERTAINING TO MAINTENANCE OF THE BAC DATAMASTER." *Page 6 
 {¶ 16} Flege contends that the trial court erred by denying his motion to suppress. In support, he argues that the State failed to demonstrate substantial compliance with the Ohio Administrative Code in regard to the administration of the Breathalyzer examination. Specifically, he claims that the State did not prove that the BAC Datamaster, the breath testing machine used by the Beavercreek Police Department, was properly maintained in accordance with Department of Health Regulations because the State did not introduce evidence to show that the machine had been properly calibrated or that the RFI detector test had been properly verified.
 {¶ 17} Preliminarily we note that when ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. State v. Johnson (2000), 137 Ohio App.3d 847,850. An appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v.Dunlap, 73 Ohio St.3d 308, 314, 1995-Ohio-243. However, an appellate court must also conduct a de novo review of the trial court's application of the law to the facts. State v. Hodge,147 Ohio App.3d 550, 2002-Ohio-3053, at ¶ 9.
 {¶ 18} When seeking to admit the results of a breath test, the State bears the burden of demonstrating that the breath test has been administered to the defendant in substantial compliance with the regulations of the Ohio Department of Health. State v. Plummer (1986),22 Ohio St.3d 292. The Ohio Supreme Court has held that "strict compliance is not always realistically or humanly possible."Plummer, 22 Ohio St.3d at 294. The Court has limited the substantial compliance standard of Plummer to errors that are "clearly de minimis." Once the State meets its burden, the burden then shifts to *Page 7 
the defendant to prove that he or she has been prejudiced by a variation from the regulations. State v. Lauer, 146 Ohio App.3d 354, 359,2001-Ohio-2291.
 {¶ 19} With these standards in mind, we turn to Flege's claims. He contends that the State failed to present sufficient evidence to support a determination that the machine was properly calibrated or that the RFI was verified. Although he admits that Majercak testified that the appropriate tests were performed, he argues that Majercak's testimony was not sufficient. He contends that the State was obligated to present documentation regarding the calibration and RFI tests, as well as the testimony of the operators who performed the calibrations. We disagree.
 {¶ 20} In City of Miamisburg v. Adams (Sep. 30, 1994), Montgomery App. No. 14333, this court held that the failure to produce documentation is not a bar to the successful prosecution of a case involving a breath test so long as the prosecution offers competent testimony supporting its case. Further, we have stated that when a motion to suppress raises general claims, the State "need only present general testimony that there was compliance with the requirements of the regulations."State v. Trung Mai, Greene App. No. 2005-CA-115, 2006-Ohio-1430. "In order to require the State to respond specifically and particularly to issues raised in a motion, an accused must raise issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the State to show substantial compliance with those regulations remains general and slight." State v. Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, ¶ 24. *Page 8 
 {¶ 21} Majercak presented general testimony regarding the fact that the machine had been properly calibrated by testifying that he had reviewed the calibration log book and observed that it was properly completed by a senior qualified operator. Flege raised no objections to this testimony during the hearing. The magistrate then issued a ruling implicitly accepting Majercak's testimony as establishing substantial compliance. Thereafter, Flege filed objections claiming that Magercak's testimony was insufficient to demonstrate substantial compliance and arguing that substantial compliance should have been proved by introduction of documentary evidence. We conclude that the failure, at the suppression hearing level, to object to Majercak's testimony or to raise a claim seeking introduction of such documents constitutes a waiver of the issue.
 {¶ 22} We conclude, based upon the record before us that the State, through Majercak's testimony, provided evidence demonstrating substantial general compliance with the testing requirements. Because Flege never cited specific issues to support his generalized assertions with regard to the calibration and RFI tests, the State's evidence, while being somewhat conclusory, was sufficient to satisfy its burden.
 {¶ 23} Flege's sole assignment of error is overruled.
 III {¶ 24} Flege's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
BROGAN, J., concurs. Grady, J., dissenting:
 {¶ 25} I respectfully dissent from the decision of the majority, because I believe *Page 9 
that it misapplies the substantial compliance rule.
 {¶ 26} In the context of an alleged violation of R.C. 4511.19, in which a breath test result is the subject of a Crim. R. 12(C)(3) motion to suppress evidence on a claim that techniques or methods prescribed in a regulation promulgated by the director of health pursuant to R.C. 3701.143 were not followed, the State may satisfy its burden of production with evidence demonstrating substantial compliance with the techniques or methods at issue. State v. Plummer (1986),22 Ohio St.3d 292. Substantial compliance is shown when the evidence demonstrates that, a failure to literally comply notwithstanding, the procedures actually employed accomplished the purposes or objects of the techniques or methods prescribed. State v. Steele (1977), 52 Ohio St.2d 187. The variance from the requirements of the regulation must be inconsequential in order for substantial compliance to be found.
 {¶ 27} The regulations promulgated by the director of health appear at O.A.C. Chapter 3701-53. Per O.A.C. 3701-53-04(A), a senior operator "shall perform an instrument check on approved breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used." In State v. TrungMai (March 24, 2006), Greene App. No. 2005-CA-115, 2006-Ohio-1430, the officer who administered the defendant's breath test testified that prior to the test he verified that an instrument check had been performed within the preceding six days. The defendant argued a failure to comply with O.A.C. 3701-53-04(A) because no evidence was offered that a second instrument check had been performed at the conclusion of the seven day period. *Page 10 
 {¶ 28} We rejected the defendant's contention in Trung Mai, citing the decisions of several other districts which held that proof of the second test is unnecessary to comply with the requirement. State v. Parker(May 9, 1995), Perry App. No. 94-CA-483; State v. Franz (April 13, 2005), Knox App. No. 04CA000013, 2005-Ohio-1755; Village of Pioneer v.Martin (1984), 16 Ohio App.3d 478. We then went on to also hold that the officer's testimony "was sufficient to demonstrate substantial compliance with O.A.C. 3701-53-04." Trung Mai, at ¶ 21.
 {¶ 29} I participated in Trung Mai, but I filed a separate opinion finding that the error assigned was barred by Traf. R. 14(C) and Crim. R. 21(E)(2)(b) because the defendant had failed to object to the magistrate's finding with respect to the matter of the second instrument check. I also noted that we previously held that compliance with O.A.C. 3701-53-04(A)(1) does not require proof of a subsequent instrument check. See: State v. McDaniel (February 25, 1988), Champaign App. No. 87-CA-11, citing Pioneer v. Martin. I explained that ". . .if a timely second check is necessary to comply with the regulation, absent proof of any second test compliance cannot be shown in any form, either strict or substantial." Trung Mai, ¶ 38.
 {¶ 30} I probably should have dissented as well as concurred inTrung Mai, because I was of the view that the majority misapplied the substantial compliance rule, which was the point of my statement quoted in the preceding paragraph. Substantial compliance cannot excuse failure to comply with a necessary step, and if a step is not necessary, no showing of compliance of any kind is required, strict or substantial.
 {¶ 31} In the present case, the State relies on our holding inTrung Mai to argue that substantial compliance was shown. However, the issue before us is not whether *Page 11 
the alleged compliance was substantial but whether the evidence the State offered was probative of compliance. The majority again misapplies the substantial compliance rule, but in this instance to the Rule of Evidence which is controlling, not to the regulation concerned.
 {¶ 32} Defendant's motion to suppress evidence of the results of his blood/alcohol test alleged that the breath testing instrument used to perform the test was not properly calibrated. O.A.C. 3701-53-04(A). As against this claim, the State had the burden to offer evidence from which the court could reasonably find that the instrument had been calibrated according to the method prescribed, not less than seven days prior to Defendant's test. Id.
 {¶ 33} Calibration does not involve a manual adjustment. Rather, gas generated by heating an alcohol-based solution is introduced in the machine to simulate the human breath. The result obtained when the test is complete must be within plus or minus 0.005 of the optimum test solution reading. If that standard is not satisfied, any health test performed on the machine must be suppressed. State v. Gatrell (Aug. 12, 1993), Pike App. No. 93CA502.
 {¶ 34} The State offered the testimony of Officer Majercak, a qualified senior operator. He did not testify that he performed the required instrument check. Instead, Officer Majercak testified that he reviewed the record of instrument checks maintained pursuant to O.A.C. 3701-53-04(E), and determined from that record that the necessary checks were performed prior to Defendant's test.
 {¶ 35} O.A.C. 3701-53-04(E) requires the testing agency to maintain a record of instrument checks. When a record is a "public record," that is, an official record or a *Page 12 
document authorized to be recorded, proof of its contents is subject to Evid. R. 1005, which states:
 {¶ 36} "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902, Civ. R. 44, Crim. R. 27 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given."
 {¶ 37} Evid. R. 1005 restricts secondary evidence offered to prove the contents of a public record to evidence of two kinds: either a certified copy of the record or an uncertified copy supported by the sworn testimony of a person with knowledge who testifies that the copy is true and correct. The secondary evidence the State offered in the present case, the testimony of a person with knowledge of the contents of the record, unsupported by a copy of it, is outside the hierarchy of secondary evidence of an official record that Evid. R. 1005 permits. Weissenberger's Ohio Evidence, Treatise (2006 Ed.), § 1001.1, 1005.1.
 {¶ 38} Because Evid. R. 1005 limits the proof it permits to evidence of a particular species, evidence of a different species that the State offers cannot substantially comply with the requirements the rule imposes. Neither does a defendant's failure to object to evidence of a different species waive the court's error in admitting that evidence, because being of a different species is not the same evidence. Not being the same, it is not probative of the proposition for which the evidence was offered, which is the content *Page 13 
of the official record which O.A.C. 3701-53-04(E) requires law enforcement agencies to maintain.
 {¶ 39} I would reverse the trial court's order denying Defendant's motion to suppress evidence, and his subsequent conviction and sentence, on a finding that the evidence the State offered was insufficient to rebut Defendant's contention that the breath testing instrument that produced the record of his blood/alcohol test had not been properly calibrated, and upon our reversal would remand the case for further proceedings on Defendant's motion to suppress. *Page 1